### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

VINCENT AZUA, PATRICK MARTINEZ,
KIRAN KUMAR PATEL AND
NATHAN SELLERS,

       Plaintiffs,

vs.                                                      NO. CIV. 00-1397 LH/LCS

DARREN OVERMAN, OWEN PENA,
CITY OF GALLUP, GALLUP
DISCOUNT LIQUORS, INC.
d/b/a PAL JOEY'S, AND VAUGHAN
DENNERLEIN,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the City of Gallup's Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) (Docket No. 6), filed October 6, 2000.  The Court, having considered the motion, the memoranda of the parties, and the applicable law, and otherwise being fully advised, concludes that Plaintiffs' complaint fails to state a § 1983 claim against the City by virtue of the conduct of Darren Overman and Owen Pena in their status as police officers. The motion to dismiss § 1983 claims shall be denied in every other respect.  The motion shall be granted as to the claims under the New Mexico Tort Claims Act.

### I.  Standard for Motion to Dismiss

Granting a motion to dismiss is a harsh remedy that must be cautiously studied, not only to

effectuate the spirit of the liberal rules of pleading, but also to protect the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989).  In ruling on a motion to dismiss, the Court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party.  *See Sutton v. Utah State Sch. for the Deaf and Blind, 1*73 F.3d 1226, 1236 (10th Cir. 1999).  In accepting the complaint's allegations as true, the Court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted.  *See Ordinance 59 Ass'n v. United States Dep't of Interior Secretary,* 163 F.3d 1150, 1152 (10th Cir. 1998).

## II.  Section 1983 Claim

In order to maintain a § 1983 claim, Plaintiffs must demonstrate that Defendants acted "under color of any statute, ordinance, regulation, custom, or usage, of any State" to deprive Plaintiffs of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.    Plaintiffs  must show two essential elements: (1)  that the Defendants deprived Plaintiffs of a right secured by the constitution and laws of the United States, and (2) that the Defendants may fairly be said to be state actors or acting under color of state law.  Persons may be state actors because they are state officials or because, as private parties, they "acted together with or obtained significant aid from state officials."  *Lugar v. Edmondson Oil Co.* 457 U.S. 922, 936 (1982).  State officials or private parties are considered to be acting "under color of state law" when they have "exercised  power . . . made possible only because the wrongdoer is clothed with the authority of state law.' "  *See West v. Atkins,* 487 U.S. 42, 49 (1988) (*citation omitted*),  *quoted in Haines v. Fisher,* 82 F.3d 1503, 1508 (10th Cir. 1996).  Careful adherence to the color of state law requirement avoids imposing on the State responsibility for conduct for which it should not fairly be

blamed.  *See Lugar,* 457 U.S. at 936.  The state actor requirement is a jurisdictional requirement under § 1983.  *Polk County v. Dodson*, 454 U.S.312, 315 (1981).

### A.  The Complaint Does Not Sufficiently Allege That Overman and Pena, in Their Status as Off-Duty Police Officers, Were State Actors.

The City argues that the complaint fails to state a claim under § 1983 because it does not allege sufficient facts to show that the officers acted under color of state law.   The complaint must sufficiently allege that Overman and Pena acted under color of state law either (1) by virtue of their status as state officials, albeit off-duty police officers, or (2) by virtue of their status as private citizens acting jointly with or in close nexus to on-duty police officers or to the City.

Plaintiffs stipulate that Overman and Pena were off-duty during both of the alleged incidents.  (Complaint at ¶¶ 10, 23)  However, off-duty status, by itself, does not eliminate the possibility that the officers acted under color of state law.  It is the nature of the act being performed, "not the clothing of the actor or even the status of being . . . off duty, which determines whether the officer acted under color of law."  *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir. 1975), *cert. dismissed*, 429 U.S. 118 (1976), *quoting Johnson V. Hackett,* 284 F.Supp 933, 937 (E.D.Pa. 1968).  If the acts are related to the performance of police duties, that is, if the exercise of power is clothed with the authority of state law, an off-duty officer may be a state actor.  *See Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423, 1429 (10th Cir. 1984).

None of the allegations in the complaint suggests that the nature of Overman and Pena's acts was related to the performance of official police duties, and in fact the opposite conclusion is compelled.  The complaint alleges that Overman and Pena harassed and physically attacked Plaintiffs or injured their property.  (Complaint at ¶¶ 12-15, 20-21, 28-31.) The complaint alleges that, during the incident with Azua and Martinez, Overman stated, "This will teach you to f--k with cops."

(Complaint at ¶ 13.)  Paragraphs 10 and 27 state that Plaintiffs knew Overman and Pena to be police officers, and Paragraph 40 alleges that the City knew that Overman and Pena, while off-duty, "used their status as members of the Gallup Police Force to terrorize citizens of Gallup . . ."

This is not to say that allegations of excessive force not authorized by the state can never be considered as sufficient for state action.  Officers can exceed the bounds of the authority given to them by the state and act under color of state law.  *See United States v. Classic*, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.").  But to hold the state liable for alleged abusive conduct of officers, the conduct  must have  occurred during the performance of  police duties that the state authorized.

For example, in *Lusby,* the Tenth Circuit found sufficient evidence in the record to show that an off-duty officer was performing official police duties and so was acting under color of state law. The officer was working as a security guard while he allegedly abused plaintiff.  The officer placed plaintiff  under arrest on the spot for shoplifting.  The officer went to the police station to finish his paperwork on the incident and used police documents to get information to complete the plaintiff's arrest forms.   There was also evidence suggesting that the officer wanted to file charges against plaintiff for assault on a police officer even though he was off-duty at the time.   749 F.2d at 1429-1430.[1]

---

[1]In *Lusby,* the Tenth Circuit pointed out that many cases would appear to treat police type duties and actions as sufficient evidence that defendant, while off-duty, was acting as an on-duty police officer under color of law.  It cited *Traver v. Meshriy,* 627 F.2d 934, 938 (9th Cir. 1980) (action under color of state law when bank guard responded to problem as police officer by identifying himself as such and showing his police identification); *Davis v.* Murphy, 559 F.2d 1098, 1101 (7th Cir. 1977) (action under color of state law when Milwaukee statute provided that police officers were always subject to duty; officers in question identified themselves as police and showed their badges and guns during a brawl they started); *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir. 1975) (action under color of state law when regulation required off-duty officer to take action "in any type of police or

In contrast, there is a notable absence of allegations in this complaint that Overman and Pena were performing official police duties during the incidents.   In fact, there is no allegation of any acts by Overman and Pena that are in any way related to their usual official police duties, authorized by the State.   Instead, the allegations appear to point towards conduct that falls within "the ambit of personal pursuits," conduct that is clearly excluded from color of law.   *Screws v. United States*, 325 U.S. 91, 111 (1945).   I conclude that the allegations are insufficient for Overman and Pena, as police officers, to be considered state actors.

### B. The Complaint Sufficiently Alleges that Overman and Pena, in Their Status as Private Citizens, Acted Under Color of State Law.

Although Overman and Pena, as off-duty police officers, will not be considered state actors, I conclude that the complaint sufficiently alleges that they may have acted under color of law in their status as private citizens.   The Supreme Court has articulated a number of tests to determine if a private citizen acts under color of law, that is, to determine if the citizen's actions may be fairly attributed to the State: (1) the nexus test; (2) the symbiotic relation test; (3) the joint action test; (4) the public functions test.   *See Sigmon v. CommunityCare HMO,* 234 F.3d 1121, 1125 (10th Cir. 2000) (*citations omitted*).    Plaintiffs appear to argue under the joint action and nexus tests.

Under the joint action test, a private person must be jointly engaged with state officials in prohibited action.   *See Sigmon,* 234 F.3d at 1126 (*citations omitted*).  One way to prove joint action is to demonstrate that the public and private actors engaged in a conspiracy.   *See id.*   Under the nexus test,   for the private person's action to be attributed to the State, the action must be "sufficiently close" to the State.   *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974).

---

criminal activity" twenty-four hours a day).  *Lusby,* 749 F.2d at 1430.

Mere acquiescence of the State is not sufficient. *See id.* at 357; *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)  ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."); *see also Gallagher v. Neil Young Freedom Concert,* 49 F.3d 1442, 1453 (10th Cir. 1995).

Here, the inquiry is twofold.  First, does the complaint sufficiently allege joint action or a close nexus between Overman and Pena with on-duty Officer Grano and another unnamed on-duty officer? Second, does the complaint sufficiently allege joint action or a close nexus between Overman and Pena's conduct and the City?

> **1.    The Complaint Sufficiently Alleges Joint Action Between Private Citizens Overman and Pena and On-Duty Officers.**

Plaintiffs' allegations of conspiracy are sufficient under the joint action test.  For a conspiracy theory under the joint action test to be successful as a basis for state action, Plaintiffs must allege that "both private and public actors share a common, unconstitutional goal."  *See Sigmon,* 234 F.3d at 1126.  "Moreover, 'the pleadings must specifically present facts tending to show agreement and concerted action.'" *See id. quoting Hunt v. Bennett,* 17 F.3d 1263, 1268 (10th Cir. 1994).

The complaint alleges that Gallup on-duty Police Officer Grano observed Overman, Pena and "their companions" during and immediately after the incident with Patel and Sellers.  (Complaint at ¶ 34.) Plaintiffs contend that Grano falsely reported to metro dispatch that the incident involved "a bunch of juveniles." (*Id.* at ¶ 34.)  The complaint also alleges that an unnamed officer who arrived on the scene to investigate the incident "did not list Overman and Pena as suspects even though they were listed as suspects in the narrative of the report." (*Id.* at ¶ 35.)  Plaintiffs contend that the purpose of this procedure was to preclude Overman and Pena from being entered in the Gallup Police

6

Department's data bank, and that this conduct was part of a pattern and practice of non-enforcement of laws and policies against police officers.  (Complaint at ¶¶ 35, 36.)

Paragraph 37 of the complaint contends that "[a]s a result of their concerted, unlawful acts," Overman, Pena, and the City deprived Plaintiffs of their constitutional rights.[2]  In addition, Paragraph 36 alleges that the "action and inaction" of City employees constituted "official ratification" of Overman and Pena's conduct.

If Grano and the investigating officer's roles in allegedly covering up Overman and Pena's misconduct were part of a pattern and practice of non-enforcement of laws and policies that constituted a conspiracy  leading to alleged constitutional violations against Plaintiffs, then liability may be established under § 1983.   In *Anaya v. Crossroads Managed Care*, plaintiffs presented evidence that defendant had appointed city law enforcement officials to serve on an advisory panel created to help establish a detoxification center.  195 F.3d 584, 587-89 (10th Cir. 1999), *cited in Sigmon,* 234 F.3d at 1126.  Crossroads executives helped city officers formulate police department policies that doubled the number of arrests for public intoxication.  The *Anaya* Court emphasized that it was Crossroad's role in creating the detention policy that led to the allegedly unconstitutional seizures and might establish ¶1983 liability.  *See id.*   Similarly, allegations that Grano and the investigating officer had a  role in creating a policy of non-enforcement of laws against Gallup police officers that consisted of official ratification of Overman and Pena's conduct, may be sufficient for a ¶1983 claim. (Complaint at ¶36.)

In conclusion, there are sufficient allegations that Overman and Pena were engaged in joint

---

[2]Paragraph 37 does not specifically name Grano and the investigating officer.  However, because Count V wholly concerns Overman and Pena's conduct in relation to the two on-duty officers' actions, it is a fair construction to attribute "concerted . . . acts" to these four men.

action with Officer Grano and the investigating officer.

2. **The Complaint Sufficiently Alleges a Close Nexus Between Private Citizens Overman and Pena's Conduct and the City to State a Claim for Municipal Liability.**

Plaintiffs allege that the City had two policies that resulted in the deprivation of their constitutional rights:[3] non-enforcement of the Gallup Police Department's regulations regarding officer conduct (Complaint at ¶¶ 40-43) and condoning the cover-up of Overman and Pena's crimes by other on-duty officers (*Id.* at ¶ 36). When a § 1983 claim is asserted against a municipality, proper analysis requires the separation of these two issues: (1) whether plaintiff's harm was caused by a constitutional violation; and, (2) if so, whether the city is responsible for that violation. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120 (1992).

Under the first issue, Plaintiffs' federal constitutional rights must be actually violated by the joint actions of Overman and Pena and on-duty officers covering up the conduct of Overman and Pena, as outlined above. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of [constitutionally excessive force] is quite beside the point." *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). A municipality cannot be liable under § 1983 for its employees' actions "if a jury finds that the municipal employee committed no constitutional violation." *Myers v. Oklahoma County Board of County Commissioners*, 151 F.3d 1313, 1316 (10th Cir. 1998), *quoted in Trigalet v. City of Tulsa, OK*, 239 F.3d 1150, 1154 (10th Cir. 2001).

---

[3] In the complaint, Plaintiffs allege that Defendants Overman and Pena deprived them of "equal protection of the laws and impeded the due course of justice in violation of the Fifth and Fourteenth Amendments" (¶ 15); and, "deprived them of liberty and equal protection of the laws, in violation of the Fifth and Fourteenth Amendments" (¶ 37). Count VI is directed against the City, alleging its deliberate indifference to the civil rights of Gallup's citizens. (¶ 43)

Next, a local government may be liable for the actions of private persons under § 1983 only where official policy or governmental custom is responsible for the constitutional violation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).   A policy does not have to be formally approved in writing. *See id.* at 691.   Practices that are widespread and so permanent and well settled as to constitute a custom or usage may infer the existence of a policy. *See St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).   This principle ensures that deliberate attempts by local government to evade liability for unconstitutional polices will be sharply limited. *See id.*

Only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986). But there are two situations where municipal liability may be found even though the action is taken by an individual other than the 'final policymaker.' *Butcher v. City of McAlester*, 956 F.2d 973, 977 (10th Cir. 1992) *citing St. Louis,* 485 U.S. at 127.   First, where plaintiff proves the existence of a custom with the force of law and second, where a final policymaker ratifies a subordinate's decision or action, and the basis for it, thus rendering a final decision chargeable to the municipality.   Ratification occurs when the policy maker knew and approved of the action and thereby adopted the unconstitutional motive. *See id.* at 977-978.   For a city to be liable for the custom, or persistent conduct, of its employees, actual or constructive knowledge must be attributable to the governing body or to an official to whom the body had delegated policymaking authority. *See Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir.) (en banc), *reh'g denied,* 735 F.2d 861 (5th Cir. 1984) *citing Littlefield v. Deland,* 641 F.2d 729 (10th Cir. 1981).

In addition, plaintiffs must  show an affirmative link between the policy or custom and the particular constitutional violation alleged. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823

(1985).  More specifically, not only must plaintiffs identify conduct properly attributable to the municipality, plaintiffs must demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  Under this nexus test,  plaintiffs must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the policy or custom and the deprivation of federal rights.  *Id.*

For Plaintiffs' §1983 claim against the City to be sufficient, therefore, it must sufficiently allege that the City's policies made by official final policymakers; or customs known to the governing body; or subordinates' decisions ratified by the final policymakers were responsible for the alleged joint action outlined in Section II B (1).  Count VI alleges that the City knew of Overman and Pena's repeated use of excessive force in the past, particularly that the officers "used their status as members of the Gallup Police Force to terrorize citizens of Gallup . . ."  (Complaint at ¶ 40.)  The count also alleges that in spite of the City's knowledge of Overman and Pena's "numerous violations of policies of the Gallup Police Department, it did not institute any disciplinary actions or otherwise deter the officers' conduct. (Complaint at ¶¶ 40, 41.)  This "inaction," Plaintiffs allege, constituted "official ratification" of the officers' misconduct.  (Complaint at ¶ 43.)   Furthermore, Count V specifically alleges the City knew, condoned, and encouraged the pattern and practice of non-enforcement of laws and policies against Gallup Police officers which resulted in the deprivation of Plaintiffs' constitutional rights.  (Complaint at ¶¶ 36, 37.)   I conclude that these allegations are sufficient to indicate a potential close nexus between the City's policies or customs and joint action as outlined above.

### III.  **State Law Claim**

The City argues that Plaintiffs' state tort claims are barred by the New Mexico Tort Claims

Act, which provides that governmental entities and public employees acting in their official capacities are immune from tort suits unless waived under the Act.     NMSA 1978, § 41-4-4(A) (Repl.Pamp.1996 & Cum.Supp.2000).    The Act's applicable waiver of immunity for the acts or omissions of law enforcement officers is set out in § 41-4-12:  government immunity does not apply to " liability for personal injury, . . . or property damage resulting from assault . . . violation of property rights or deprivation of any rights . . . secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting in the scope of their duties."   The City contends that this waiver does not apply because Overman and Pena were not acting within the scope of their duties during either of the alleged incidents.

Under SCRA 1986, 13-407, an employee acts within the scope of employment if the act was fairly and naturally incidental to the employer's business, and if the act did not arise entirely from some external, independent and personal motive on the part of the employee. *See Narney v. Daniels,* 115 N.M. 41, 49 (Ct. App. 1992).   In *Narney,* the Court determined that  an off-duty officer's unauthorized act would be considered  "in the scope of employment if the action (1) is the kind the employee is employed to perform; (2) occurs during a period reasonably connected to the authorized employment period; (3) occurs in an area reasonably close to the authorized area; and (4) is actuated, at least in part, by a purpose to serve the employer." *Id.* at 49.

The complaint does not allege facts that support a conclusion that Overman and Pena's actions meet the *Narney* test.  Indeed, for the purposes of the motion to dismiss,  Plaintiffs  agree with the City's contention that Overman and Pena's alleged actions did not occur within the scope

11

of their duties.   The Court adopts this conclusion.[4]

Plaintiffs instead argue that the complaint alleges conduct by other law enforcement officers that occurred in the scope of *their* duties, relying on Paragraphs 29, 34-37, 40-40, 46-48.   They argue that these allegations are sufficient to  extend liability to the City.  The Court disagrees and discusses each of these paragraphs below.

Paragraph 29 of the complaint  alleges that "several additional individuals who identified themselves as Gallup Police Officers" joined Overman and Pena in "harassing" Plaintiffs.   One of these individuals allegedly hit one of the Plaintiffs; another blow struck a second Plaintiff.  (Complaint at ¶ 29.)   There are no facts to suggest that these officers were on duty or were performing police duties during the incident.  There are no facts to indicate these individuals were  acting in the scope of their duties.   None of these individuals has been identified and made a party to this action.  This allegation is insufficient to extend liability to the City.

The facts alleged in Paragraphs 34-37 concern on-duty Police Officer Grano and an unnamed investigating officer.   It is difficult to ascertain from the complaint under what tort theory Plaintiffs seek to hold the City liable regarding the conduct of these two officers.  Although Paragraphs 34-35 sufficiently allege that Grano and the investigating officer were acting in the scope of their duties, this is not sufficient to state a  tort claim.  The complaint must also indicate that Grano and/or the investigating officer committed tortious acts or that they caused Overman and Pena to commit a tortious act.  As discussed below, the complaint fails to do so.

---

[4]*See Healey v. Scovone,* 188 F.3d 518,  **3 (10th Cir. 1999) (unpublished opinion) (concluding that defendant state employee used the influence of his official position to commit the alleged torts under the New Mexico Tort Claims Act, but because the acts were not the kind he was authorized to perform, and because they "appear to have arisen from 'some external, independent and personal motive,' " the acts did not occur during the scope of employment) .

The complaint does not allege that the officers committed tortious acts enumerated in § 41-4-12.  Instead, it alleges that Grano "observed Overman, Pena, and their companions," and then relayed false information to metro dispatch that the incident involved a "bunch of juveniles." (Complaint at ¶ 34.)  It further alleges that the uniformed investigating officer who prepared a police report on the incident "did not list [Overman and Pena] as suspects, even though they were listed as suspects in the narrative text of the report."  (Complaint at ¶ 35.)  None of these actions constitutes an enumerated tort that could waive immunity.

Plaintiffs correctly argue that a law enforcement officer need not personally commit a tort listed in § 41-4-12 for the officer's conduct to be waived from immunity.  "It suffices that the law enforcement officer, while acting within the scope of duty, negligently or intentionally causes the commission of a listed tort by another person."  *Ortiz v. New Mexico State Police*, 112 N.M. 249, 251 (Ct. App. 1991) (holding that the state Tort Claims Act does not provide immunity to law enforcement officers whose negligent supervision and training of their subordinates proximately resulted in those subordinates committing an enumerated tort); *see also Schear v. Board of County Commissioners,* 101 N.M. 671, 673 (1984) (waiving immunity when a citizen was attacked by a criminal after sheriff's officers negligently failed to respond to an emergency call and holding that "law enforcement officers need not be the *direct cause* of injury (in the sense of having inflicted it) in order for liability to attach") (emphasis in original).  Plaintiffs, though,  fail to  allege that the conduct of these two on-duty officers in any way caused the torts allegedly committed by Overman and Pena.   Indeed, the on-duty officers did not  appear on the scene until after the alleged incident

occurred.[5]

The allegations are sufficient to state a conspiracy claim under § 1983 as discussed above. But conspiracy is not an enumerated exception to government immunity from liability under § 41-4-12. In addition, Plaintiffs have not identified the investigating officer nor have they named that officer and/or Officer Grano as defendants in their complaint. The Court therefore concludes that Paragraphs 34-35 are insufficient to state a tort claim against Police Officer Grano, the unnamed investigating officer, or the City.

Paragraphs 40-43 concern allegations about the City's awareness of Overman and Pena's "numerous instances of misconduct" and its failure to take any "action to remove or discipline the officers." This inaction "allowed Overman and Pena to continue their pattern of intimidation and misconduct . . ." (Complaint at ¶ 42.) These allegations are insufficient to state a tort claim, however, because Plaintiffs acknowledge that Overman and Pena were not acting in the scope of their duties.

Paragraphs 46-48 of the complaint allege that the City's negligent supervision of Overman and Pena proximately resulted in injuries to Plaintiffs. (¶¶ 45-48.) Plaintiffs are correct in arguing that the Tort Claims Act does not provide immunity to law enforcement officers whose negligent supervision of their subordinates proximately causes the subordinates to commit enumerated torts. *See Ortiz,* 112 N.M. at 251. However, for government immunity to be waived, the tort must be committed by subordinates who are acting "within the scope of their duties." § 41-4-12 NMSA 1978 (Repl.Pamp.1996 & Cum.Supp.2000). Because Plaintiffs do not allege that the off-duty

---

[5]The complaint does allege that "the action and inaction of [the City's] employees consisted of official ratification" of Overman and Pena's conduct. (Complaint at ¶ 36.) It is not certain to what conduct "action and inaction" refers. In any event, the allegation is not sufficient for the element of causation required to hold the City liable for the conduct of Overman and Pena.

officers were acting within the scope of their duties during the incidents in question, their claim of negligent supervision of Overman and Pena must fail.

The Court, therefore, grants the City's motion to dismiss state tort claims against it.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Docket No. 6), filed October 6, 2000, is **granted in part and denied in part:**

1. The motion to dismiss 42 U.S.C. § 1983 claims is **granted** only insofar as the City is not liable for Overman and Pena's conduct in their status as police officers. The motion to dismiss § 1983 claims is **denied** in every other respect.

2. The motion to dismiss is **granted** as to Count VII. Plaintiffs' claims against the City under the New Mexico Tort Claims Act, § 41-4-12, NMSA 1978 are dismissed.

_____

**UNITED STATES DISTRICT JUDGE**